ing machine. This was under the extension of the patent procured by the administrator, which ran to November, 1849. Now, it is admitted that the surrender and renewal of the patent would not affect, injuriously, the right of Stolley. But his right extended only to the limitation of the renewed patent to 1849, and this he has fully enjoyed. That he had no right beyond this has been shown, under the second ground assumed by defendant's counsel. Stolley must be considered as having taken his license, subject to the power of congress, to extend the patent by a special act, as was subsequently done. It is said that the surrender of the patent is conclusive evidence of its invalidity, and, consequently, that the patentee could have had no rights under the original patent. This inference is not sustained by the facts. The patent had been sustained on all points of objection, by several of the circuit courts, and by the supreme court. The thirteenth section of the act of 1836 provides that "the patent so reissued, together with the corrected description and specifications, shall have the same effect and operation in law, on the trial of all actions hereafter commenced for causes subsequently accruing, as though the same had been originally filed in such corrected form, before the issuing of the original patent." Now, if the patent were invalid, by reason of a defective specification, as contended, still the right of the plaintiff is sustainable. The ground of complaint is for causes accruing subsequently to the re-issuing of the corrected patent, and in all such cases the corrected patent is made to apply, by the act, as though it had been so issued originally. The argument, therefore, that Stolley acquired rights under the invalid patent, which he could exercise under the legislative extension of the right, is unsustainable. He acquired no right beyond the term for which the patent was renewed, on the application of the administrator. The extension granted by congress, it is said, was of the original patent. This is admitted. It was the original patent that was surrendered and corrected after the legislative extension. Under that extension, the patentee could exercise all the rights, and claim all the privileges, conferred by the original patent.

The motion to dissolve the injunction is overruled.

[NOTE. For other cases involving this patent, see note to Gibson v. Van Dresar, Case No. 5,402.]

---

# Case No. 1,560.

## BLOOMER v. VAUGHT.

[Cited in Gibson v. Giffard, Case No. 5,395, note. Nowhere reported; opinion not now accessible.]

---

BLOOMGART (UNITED STATES v.). See Cases Nos. 14,612 and 14,613.

# Case No. 1,561.

## In re BLOOMINGTON.

### [42 How. Pr. 283.]

Circuit Court, D. Illinois.　April 1, 1871.

MUNICIPAL CORPORATIONS—BONDS—INNOCENT PURCHASER—DEFENSES.

[A municipal corporation is liable on its road improvement bonds in the hands of innocent purchasers, although such bonds were put forth in violation of a condition that they should only be issued upon a certain amount of work being done.]

At law.

DRUMMOND, Circuit Judge. When, under certain circumstances, it is conceded, as in the case here, that a corporation or municipality has the power to issue bonds, then, when these bonds or coupons attached are in the hands of innocent persons, who have paid value for them, the question is, whether it is competent for the municipality to set up that those conditions have not been complied with. In most of these cases it is declared that, in order to enforce the issuing of these bonds, there must be an application made to the municipality by the voters and it is only when this is done that the municipality has a right to issue the bonds. When such application is made, the proper number of voters is a precedent to the issuing of the bonds. The power to determine whether the application has been made in the proper way, and by the proper number of voters, rests with the municipality or its agents; and when they have acted, although it is a condition precedent to the issuing of the bonds, the municipality cannot say that it has acted without authority,—without this particular condition having been complied with. This rule runs through all authorities. Now, as we understand, the objection is made here that one of the conditions upon which these bonds were to issue was, that they should not be issued except upon a certain amount of work being done upon the road. It is conceded by the defense that if the facts are peculiarly within the cognizance of the parties, that other persons—innocent purchasers—are not bound to inquire into the existence of these facts. How is it here? Now, whether or not the application was made by the proper number of voters is a matter of public notoriety, and ought to be a matter of record; yet, as we say, it is not necessary for a bona fide purchaser of a bond or coupon to inquire into that, and go behind the bond to ascertain whether this condition has been complied with or not. Why should there be in such a case as this any greater necessity for inquiring as to how much work has been done? Must the purchaser go upon the road and ascertain whether the ties have been laid down, and the road put in running order, when the law declares that the bonds shall not be issued, except those facts exist when the bonds have been issued by the agents of the municipal-

ity? Why is a party any more obliged in that case than in the other to ascertain the facts? Although their case shows that the business was somewhat loosely done, and that certain facts were not spread upon the record as they should have been, yet that fact would not make it necessary to go and ascertain whether every contingency had occurred precedent to the issuing of the bonds. The law presumes that the agents of a public corporation will act in conformity with the law, and the corporation must indorse the acts of its agents. These agents have done what the law authorized to be done, and issued the bonds. The bonds bear on their face the fact that they were issued in conformity with the law; and when an innocent purchaser looks upon them in the market, and buys them with this evidence of legality upon their face, it is not competent for the municipality to turn round and say that its agents did not act as they ought to have done,—that they did not comply with the certain conditions with which they were required to comply. This is a rule of universal application which has been repeatedly settled by the decisions of the supreme court of the United States, and has been uniformly acted on for a series of years. It would be reversing all the rules that have existed a long time to say that it is competent now for the town of Bloomington to come in and say that "our agents have issued these bonds before they were authorized to issue them." When the bonds were issued the town of Bloomington took the responsibility of the acts of its agents, and outside parties dealing with bonds in the market were not obliged to look into the hidden things which were done or not done by the agents of the municipality.

It is for these reasons, as we understand them, that the plaintiffs are authorized to recover in these cases. Let judgment enter for the coupons, with interest on them since their maturity.

## Case No. 1,562.

### In re BLOSS.

### [4 N. B. R. 147 (Quarto, 37).] [1]

### Circuit Court, D. Michigan. 1870.

BANKRUPTCY—SECURED DEBT — WAIVER OF SECURITY—PETITION FOR INJUNCTION — SUFFICIENCY OF ALLEGATIONS — RESTRAINING SALE OF REALTY—GROUNDS FOR.

1. Where a petition was filed, and an injunction allowed against C. E. B., a son of the bankrupt, to restrain the sale of certain real estate, etc., and C. E. B. moves to dissolve the injunction on affidavit of himself and the bankrupt, denying the collusion and connivance charged in the petition, *Held*, a secured debt is provable within the meaning of section 39 of the bankrupt act.

[Cited in Re Stansell, Case No. 13,293; Re Parkes, Id. 10,754; Re Hyndman, 5 Fed. 709; Re Baxter, 12 Fed. 75.]

[1] [Reprinted by permission.]

2. That a creditor who has a lien upon the property of his debtors by virtue of a judgment, etc., filing a petition for adjudication of bankruptcy without reference to such lien, thereby waives and relinquishes the same, and stands before the court as an unsecured creditor.

[Cited in Re Hope Mining Co., Case No. 6,681; Re Stansell, Id. 13,293; Re Jaycox, Id. 7,242; Re McConnell, Id. 8,712; Re Broich, Id. 1,921.]

[See Ex parte Alexander, Case No. 161.]

3. Allegations upon information and belief merely, unsupported by other proof, are not sufficient to sustain an injunction.

4. C. E. B. had probable cause to believe that J. B. B., the alleged bankrupt, was insolvent, and that he suffered the said C. E. B. to obtain judgment, execution, and levy, with intent to give him a preference in violation of the bankrupt act, and that therefore the injunction issued in this case ought to be retained and continued till the further order of the court. Motion to dissolve denied.

In bankruptcy. On filing the petition of adjudication of bankruptcy, a petition was filed and an injunction was allowed against one Charles E. Bloss, a son of the alleged bankrupt, to restrain the sale of certain real estate upon an execution in favor of the said Charles E., and against the said alleged bankrupt, issued from the circuit court for Wayne county, for the reason, as alleged in said petition, that the judgment upon which the execution issued was obtained by collusion and connivance with the said alleged bankrupt, and for the purpose of preventing the petitioning creditor from collecting his claim. Charles E. Bloss now moves to dissolve the injunction, which motion is founded on affidavit of himself and the said alleged bankrupt, denying the collusion and connivance, and the fraudulent purpose charged in the petition. On the hearing of the motion, counsel for the petitioning creditors offered counter-affidavits, which were objected to, but the affidavits were received subject to the objection. It appears, from the affidavits, that the claim of the petitioning creditor was also in judgment in the Wayne circuit court, and that he had garnished a claim of the alleged bankrupt against the Detroit and Milwaukee Railway Company, and had also levied an execution upon the same real estate, but subsequent to the levy in favor of the said Charles E. Bloss. It is contended, as an additional ground for dissolving the injunction, that the claim of the petitioning creditor being a second claim, it was not provable under the bankrupt law, and therefore he could not file the petition for adjudication of bankruptcy.

Mr. Dickinson and Mr. Russell, for the motion.

Wilkison & Post, for petitioning creditors.

LONGYEAR, District Judge. First. As to receiving counter-affidavits on a motion to dissolve an injunction, the authorities are by no means uniform. In bankruptcy cases, where there are generally interests of creditors involved other than those immediately